IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANGELO DAVID PENQUE, #A6110619,<br><br>             Plaintiff,<br><br>     v.<br><br>DEPARTMENT OF PUBLIC SAFETY, *et al.*,<br><br>             Defendants. | Civ. No. 20-00338 DKW-WRP<br><br>ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND |

Before the Court is pro se Plaintiff Angelo David Penque's civil rights complaint brought pursuant to 42 U.S.C. § 1983.  ECF No. 1.  Penque alleges that Defendants violated his constitutional rights by failing to protect him, denying him medical care, infringing on his right to access the courts, and violating the Free Exercise Clause of the First Amendment during his pretrial confinement at the Maui Community Correctional Center ("MCCC") and Oahu Community Correctional Center ("OCCC").[1]  For the following reasons, the Complaint is DISMISSED with partial leave to amend, as specified below.

---

[1]Penque names as Defendants the Department of Public Safety, the State of Hawaii, MCCC Warden Taylor in her official capacity, and Adult Corrections Officer ("ACO") Himilaya, ACO Conrady, Dr. Strasberger, and "all people in recorded conversations at [the MCCC's] medical department" in their individual capacities.

# I. <u>STATUTORY SCREENING</u>

The Court is required to screen complaints brought by prisoners seeking relief against a governmental officer or employee of a governmental entity. 28 U.S.C. §§ 1915(e)(2), 1915A(a).  The Court must dismiss any portion of a complaint that: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("It is . . . clear that section 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").

In determining whether a complaint should be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court applies the same standard as that under Federal Rule of Civil Procedure 12(b)(6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam); *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).  Under this standard, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff.  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020).

A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Likewise, the "mere possibility of misconduct" or an "unadorned, the defendant-unlawfully-harmed me accusation" does not meet this plausibility standard. *Id.* at 678-79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the Court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

The Court liberally construes a pro se litigant's pleadings and affords him the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Although the Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint, *Lopez*, 203 F.3d at 1130, if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate, *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. **PENQUE'S CLAIMS**[2]

Penque alleges in Count I that prison officials at the MCCC failed to protect him from a February 23, 2019 assault. ECF No. 1 at 7. Penque claims that the MCCC was overcrowded, had "almost no security cameras," and did not have any staff members or guards in the dayroom or recreational area.

In Count II, Penque alleges that he was denied medical care at the MCCC after the assault. ECF No. 1 at 8. Although Penque was taken to the emergency room where X-rays were taken and where an emergency room doctor allegedly told him that he should see an orthopedic specialist within forty-eight hours, he claims that forty days passed before he saw a specialist. Penque claims he overheard an unidentified "transportation officer" tell the hospital employee completing Penque's emergency room discharge paperwork to "hurry" and "never mind about the specialist." *Id.* Penque claims the medical staff at the MCCC did not believe that he needed further treatment.

In Count III, Penque alleges that he was denied medical care at the OCCC. ECF No. 1 at 9. After Penque was flown to Oahu to see an orthopedic doctor, he underwent surgery on April 8, 2019. Although Penque requested to remain in the hospital, he was returned to the OCCC. Penque's wound became infected and he was rushed to the Queen's Medical Center where he underwent a second surgery

---

[2]Penque's factual allegations are accepted as true. *Nordstrom*, 762 F.3d at 908.

on April 17, 2019. *Id.* at 6. After this surgery, Penque was on intravenous antibiotics for eight weeks. He underwent a third surgery in July 2020. Penque claims that he is deaf in his left ear, and he suffers from vertigo, long-term pain, short-term memory loss, nightmares, and post-traumatic stress disorder.

Penque alleges in Count IV that he was denied access to the courts. ECF No. 1 at 10. Penque claims that Defendant ACO Conrady told him that he did not care about Penque's constitutional rights and denied Penque's related grievance. Penque also claims that he was refused access to the law library.

In Count V, Penque alleges that prison officials violated the Free Exercise Clause of the First Amendment by denying him access to a Bible for three weeks during his recovery following the April 17, 2019 surgery. ECF No. 1 at 11. Penque also claims prison officials denied him a "common fare diet."

Penque seeks medical insurance coverage for life and compensatory and punitive damages totaling four million dollars. He also requests a "common fare diet," modifications to the grievance system, and access to legal materials.

### III.  DISCUSSION

**A. Legal Framework for Claims Under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of

state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Rawson v. Recovery Innovations, Inc.*, 2020 WL 5405684, at *3 (9th Cir. Sept. 9, 2020).  "Section 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrong." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1012 (9th Cir. 2020).  The Court recognizes at least four different general tests that may aid in identifying state action: (1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.  *Id.*  "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists."  *Id.* (internal quotation marks omitted).  Additionally, a plaintiff must allege that the defendant's conduct was the actionable cause of the claimed injury." *Harper v. City of L.A.*, 533 F.3d 1010, 1026 (9th Cir. 2008).  "To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation."  *Id.*

**B.  Eleventh Amendment Immunity**

Under the Eleventh Amendment, neither a state nor its agencies may be sued in federal court without its consent.  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  The Eleventh Amendment also bars damages actions against state officials in their official capacity.  *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007).  However, it generally does not bar suits for prospective, non-monetary relief against state officials.  *N. E. Med. Servs., Inc. v. Ca. Dep't of*

*Health Care Servs., Health & Human Servs. Agency, Cal.*, 712 F.3d 461, 466 (9th Cir. 2013).

Penque names as Defendants the Department of Public Safety and the State of Hawaii. Penque's claims against the State of Hawaii and its Department of Public Safety are barred by the Eleventh Amendment. *See Neal v. Shimoda*, 131 F.3d 818, 832 n.17 (9th Cir. 1997) ("We . . . agree with the district court that the State of Hawaii is entitled to the protections of sovereign immunity under the Eleventh Amendment"). Penque also names Defendant Warden Taylor in his official capacity. To the extent he seeks monetary damages from Warden Taylor, the Eleventh Amendment bars these claims.[3] *Flint*, 488 F.3d at 824-25. These claims are DISMISSED with prejudice.

## C. Fourteenth Amendment claims

A pretrial detainee has a right under the Due Process Clause of the Fourteenth Amendment to be free from punishment prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A pretrial detainee may therefore allege a cause of action under the Due Process Clause where conditions of confinement, such as food, clothing, shelter, medical care, and reasonable safety, "amount to punishment." *Id.*

---

[3] To the extent Penque asks for prospective, non-monetary relief, he must specify from which Defendant, if any, he seeks this relief.

### 1. Failure to protect

Penque alleges in Count I that Defendant MCCC Warden Taylor failed to protect him from a February 23, 2019 assault. ECF No. 1 at 7. The elements of a pretrial detainee's Fourteenth Amendment failure to protect claim are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc).

Penque fails to state a claim because he has not alleged that Warden Taylor made an intentional decision that put him at substantial risk of suffering serious harm. *Castro*, 833 F.3d at 1071. Although Penque claims that the MCCC was overcrowded and understaffed, he does not allege that assaults on inmates by other inmates were common. Nor does he allege that he had been threatened or harmed in the past. Likewise, although Penque claims that gangs controlled the facility and guards were not in the dayroom or recreation area, he does not say who assaulted him or where the assault occurred.

Moreover, Penque does not allege that prison officials did not take reasonable available measures to abate a threat to his safety. He does not claim that prison officials had any reason to suspect that he might be harmed prior to February 23, or that they did not respond when the assault occurred. Indeed, Penque acknowledges that he was segregated from the general population upon returning to the MCCC. Because Penque fails to allege that he faced a substantial risk of suffering serious harm and a failure by prison officials to abate a risk to his safety that they either knew of or should have appreciated, his threat to safety claim is DISMISSED with leave to amend.

### 2. Denial of medical care

Penque alleges in Counts II and III that he was denied medical care at the MCCC and OCCC, respectively. ECF No. 1 at 8-9. Claims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment are evaluated under an objective deliberate indifference standard. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). The elements of a denial of medical care claim are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances

9

would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Id.* at 1125.

Penque alleges in Count II that he was denied medical care at the MCCC. His factual allegations do not support such a claim. Penque acknowledges that he was promptly taken to the emergency room after the February 23 incident, subsequently met with medical staff at the MCCC, and was flown to Oahu to see an orthopedic doctor. Although Penque says he should have seen an orthopedic doctor sooner, he does not identify who prevented this from happening or why.[4] Penque also does not say which members of the MCCC's medical staff he met with, when, what he told them, and when they decided to send him to an orthopedic doctor.

Penque asserts in Count III that he was denied medical care at the OCCC. Penque's claim fails at the starting gate because the Complaint does not name as a Defendant any prison official at the OCCC. Moreover, the Complaint's factual

---

[4] Penque says ACO Dix (who is not named as a Defendant) and ACO Himilaya transported him to the hospital. Penque claims an unidentified "transportation officer" told the person completing Penque's discharge paperwork to "hurry" and "never mind about the [orthopedic] specialist." If Penque believes that he was denied medical care because of the actions of this unnamed "transportation officer," he must explain who this person is and how he or she was acting under color of state law. He must also explain how this person's conduct put him at substantial risk of suffering serious harm. According to Penque, the emergency room doctor only told him that he "*probably* need[ed] a *minor* surgery." ECF No. 1 at 8 (emphases added).

allegations do not support Penque's claim.  Penque admits that he met with an orthopedic doctor on Oahu upon transfer to OCCC, underwent surgery on April 8, 2019, was rushed to the hospital for a second surgery on April 17, 2019, was on intravenous antibiotics for eight weeks after the second surgery, and underwent a third surgery in July 2020.  Nothing suggests that Penque was denied medical care at the OCCC.  Although Penque says he was not provided with materials to clean his wound after the first surgery, Penque does not claim that he requested these supplies from prison officials or otherwise expressed to prison officials any concerns regarding the condition of his wound.  In short, Penque fails to say how prison officials at the OCCC denied him medical care.[5]  Penque's denial of medical care claims are thus DISMISSED with leave to amend.

## D. First Amendment Claims

### 1. Access to the courts

Penque alleges in Count IV that he was denied access to the courts.  ECF No. 1 at 10.  "The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities [] as well as a right of meaningful access to the courts."  *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *see also Entler v.*

---

[5]Although Penque names Dr. Strasberger as a Defendant, he fails to say how Dr. Strasberger was acting under color of state law or how he allegedly violated a right secured by the Constitution or the laws of the United States.  If Penque chooses to file an amended complaint, he must remedy these deficiencies, or the Court may dismiss any claims against Dr. Strasberger.

*Gregoire*, 872 F.3d 1031, 1039 (9th Cir. 2017) ("The most fundamental of the constitutional protections that prisoners retain are the First Amendment rights to file prison grievances.").

Included with the right of access to the courts "is a prisoner's right of access to adequate law libraries or legal assistance from trained individuals." *Vandeleft v. Moses*, 31 F.3d 794, 796 (9th Cir. 1994). A prisoner contending that his right of access to the courts was violated because of inadequate access to a law library must establish two things: (1) the access was so limited as to be unreasonable; and (2) the inadequate access caused him actual injury, *i.e.*, show a specific instance in which he was actually denied access to the courts. *Id.* at 797.

In Count IV, Penque says Defendant ACO Conrady denied a grievance, saying he did not care about Penque's constitutional rights. But a prison official's allegedly improper processing or denial of a prisoner's grievances or appeals, without more, does not serve as a sufficient basis for raising a civil rights claim. *See Freitas v. Derr*, Civ. No. 20-00312 LEK-KJM, 2020 WL 4067702, at *3 (D. Haw. July 20, 2020). Penque does not claim that he was prevented from filing grievances, appealing denials of those grievances, or being able to access the courts. Indeed, Penque admits that he filed at least one grievance at the MCCC and "20 or 30" grievances at the OCCC. Although Penque suggests that prison officials refused him grievance forms, he does not say who denied him these

12

forms, when the alleged denial occurred, or what injury, if any, these refusals allegedly caused.

Penque also claims that he was "almost complete[ly]" denied access to the law library. Penque fails to say when he sought to access the law library, who denied him access, or what injury this denial allegedly caused. Nor has Penque identified a specific instance where he was denied access to the courts. *Vandeleft*, 31 F.3d at 796; *see also Myron v. Terhune*, 225 F. App'x 434, 439 (9th Cir. 2007) (unpublished) ("Because [plaintiff] fails to allege that he was actually denied access to the courts to pursue any particular legal action, we reject his library-access contention."). Penque's access to the courts claims are DISMISSED with leave to amend.

### 2. Free Exercise Clause

Penque alleges in Count V that Defendants violated the Free Exercise Clause of the First Amendment. ECF No. 1 at 11. "The right to exercise religious practices and beliefs does not terminate at the prison door. The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam) (citations omitted); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

"A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of [his] religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). In analyzing the legitimacy of regulation of prisoners' religious expression, the Court considers: (1) whether there is a valid, rational connection between a state interest and the prison regulation; (2) whether prisoners have an alternative method of engaging in religious practice; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates; and (4) the absence of ready alternatives to the challenged regulation. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987).

Penque alleges in Count V that he was denied access to a Bible for "close to 3 weeks" after his second surgery. Penque fails to say when he asked for a Bible, who denied him access to one, or any reasons provided for the denial. Nor does he say if he was denied access to all religious writings or only the Bible. Similarly, although Penque says he was refused a "common fare diet," he does not say when he requested a dietary accommodation, who denied his request, and how this denial burdened his religious practices. Penque's claims under the Free Exercise Clause are DISMISSED with leave to amend.

## IV. <u>LEAVE TO AMEND</u>

Penque may file an amended complaint on or before **October 30, 2020** to cure the deficiencies in his Complaint identified above. If Penque elects to file an amended complaint, he must comply with the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the District of Hawaii. Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading. An amended complaint will supersede the preceding complaint. *See Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR99.7.10. An amended complaint must be short and plain, comply with Fed. R. Civ. P. 8, and be submitted on the court's prisoner civil rights form. Defendants not renamed and claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

## V. <u>28 U.S.C. § 1915(g)</u>

If Penque fails to file an amended complaint, or is unable to amend his claims to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis under 28 U.S.C. § 1915,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted,

15

unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI. **CONCLUSION**

(1) The Complaint is DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a colorable claim for relief.  Penque's claims against the Department of Public Safety and the State of Hawaii are DISMISSED with prejudice.  Penque's claims seeking damages against MCCC Warden Taylor in her official capacity are also DISMISSED with prejudice.  Penque's remaining claims are DISMISSED with leave to amend.

(2) Penque may file an amended complaint, consistent with this Order, on or before **October 30, 2020.**  Failure to file an amended complaint by **October 30, 2020** may result in the dismissal of this action with prejudice.

(3) The Clerk is directed to send Penque a blank prisoner civil rights complaint form to facilitate his compliance with the directions in this Order.

IT IS SO ORDERED.

Dated: October 8, 2020 at Honolulu, Hawaii.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

*Angelo David Penque v. Department of Public Safety, et al.*; Civil No. 20-00338 DKW-WRP; **ORDER DISMISSING COMPLAINT WITH PARTIAL LEAVE TO AMEND**

16