IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ANGELO DAVID PENQUE, #A6110619,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF PUBLIC SAFETY, *et al.*,<br><br>Defendants. | Civ. No. 20-00338 DKW-WRP<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART WITH PARTIAL LEAVE TO AMEND |

Before the Court is pro se Plaintiff Angelo David Penque's First Amended Complaint ("FAC") brought pursuant to 42 U.S.C. § 1983. ECF No. 15. Penque alleges that Defendants[1] violated his constitutional rights by failing to protect him and denying him medical care during his pretrial confinement at the Maui Community Correctional Center ("MCCC") and Oahu Community Correctional Center ("OCCC").[2] For the following reasons, the FAC is DISMISSED in part with partial leave to amend, as specified below.

---

[1] Penque names as Defendants the Department of Public Safety and the State of Hawaii, and, in their individual capacities, "Nurses in Recorded Conversations," Kyle Malaqui, Nurse Jennifer Lopez, "Doctor (Lead Doctor) OCCC," "Nurse Tiare OCCC," "Duty Watch Commander," and "Chief of Security MCCC." Because Penque does not name as Defendants in the FAC Warden Taylor, ACO Himilaya, Maui Correctional Center Medical Department, ACO Conrady, and Doctor Strasberger, each of whom was named in Penque's original complaint, they are TERMINATED.

[2] Penque is currently incarcerated at the Halawa Correctional Facility.

## I. <u>STATUTORY SCREENING</u>

The Court is required to screen complaints brought by prisoners seeking relief against a governmental officer or employee of a governmental entity. 28 U.S.C. §§ 1915(e)(2), 1915A(a). The Court must dismiss any portion of a complaint that: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b)(1); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("It is . . . clear that section 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").

In determining whether a complaint should be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the Court applies the same standard as that under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam); *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014). Under this standard, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir. 2020).

A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Likewise, the "mere possibility of misconduct" or an "unadorned, the defendant-unlawfully-harmed me accusation" does not meet this plausibility standard.  *Id.* at 678-79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the Court to draw on its judicial experience and common sense.  *Iqbal*, 556 U.S. at 679.

The Court liberally construes a pro se litigant's pleadings and affords him the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  Although the Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint, *Lopez*, 203 F.3d at 1130, if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate, *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  **PENQUE'S CLAIMS**[3]

Penque alleges in Count I that prison officials at the MCCC failed to protect him from a February 23, 2019 assault by four inmates who were known gang members.  ECF No. 15 at PageID ## 111–14, 122.  According to Penque, assaults were common at the MCCC, and he was previously assaulted by a cellmate in October 2018.  *Id.* at PageID # 111–12.

In Count II, Penque alleges that he was denied adequate medical care at the MCCC following the assault.  *Id.* at PageID ## 115–19.  After visiting the emergency room, Penque's discharge paperwork allegedly said that he "must see a specialist within 48 hours."  *Id.* at PageID # 115.  Penque claims that forty days passed before he saw a specialist.  *Id.* at PageID # 117.

In Count III, Penque alleges that he was denied adequate medical care at the OCCC.  *Id.* at PageID ## 120–21.  After Penque was flown to Oahu to see a specialist, he underwent surgery on April 8, 2019.  *Id.* at PageID # 122.  Upon returning to the OCCC, Penque was allegedly denied "medical supplies to keep the surgery site clean" and a "clean proper resting place."  *Id.* at PageID # 120.  Penque's wound became infected, and he had to undergo a second surgery later in April.  *Id.* at PageID # 122.

---

[3]Penque's factual allegations are accepted as true.  *Nordstrom*, 762 F.3d at 908.

Penque seeks injunctive relief from the Department of Public Safety and the State of Hawaii, in addition to damages totaling four million dollars from the Defendants named in their individual capacities. *Id.* at PageID # 123.

### III.  DISCUSSION

A.  **Legal Framework for claims under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).  Section 1983 requires a connection or link between a defendant's actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976); *May v. Enomoto*, 633 F.2d 165, 167 (9th Cir. 1980).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

**B.     Eleventh Amendment immunity**

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  "This jurisdictional bar applies regardless of the nature of the relief sought."  *Pennhurst*, 465 U.S. at 100; *see Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1022 n.5 (9th Cir. 2010) (noting that state entities are immune from suit regardless of the nature of the relief sought).

Penque seeks injunctive relief from the Department of Public Safety and the State of Hawaii.  ECF No. 15 at PageID ## 105, 123.  These claims are barred by the Eleventh Amendment.  *See Neal v. Shimoda*, 131 F.3d 818, 832 n.17 (9th Cir. 1997) ("We . . . agree with the district court that the State of Hawaii is entitled to the protections of sovereign immunity under the Eleventh Amendment"); *Blaisdell v. Haw. Dep't of Pub. Safety*, 621 F. App'x 414, 415 (9th Cir. 2015) ("The district court properly dismissed [plaintiff's] action against the Hawaii Department of Public Safety because it is barred by the Eleventh Amendment.").  Penque's claims

against the Department of Public Safety and the State of Hawaii are DISMISSED with prejudice.

## C.    Fourteenth Amendment claims

A pretrial detainee has a right under the Due Process Clause of the Fourteenth Amendment to be free from punishment prior to an adjudication of guilt.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  A pretrial detainee, therefore, may allege a cause of action under the Due Process Clause where conditions of confinement, such as food, clothing, shelter, medical care, and reasonable safety, "amount to punishment."  *Id.*

### 1.  Failure to protect

Penque alleges in Count I that Defendants Malaqui, an unnamed Duty Watch Commander at the MCCC, and the Chief of Security at the MCCC failed to protect him from a February 23, 2019 assault.  ECF No. 15 at PageID ## 111–14.  The elements of a pretrial detainee's Fourteenth Amendment failure to protect claim are:  (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved— making the consequences of the defendant's conduct obvious; and (4) by not

7

taking such measures, the defendant caused the plaintiff's injuries. *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc).

Regarding the third element, the defendant's conduct must be objectively unreasonable, a test that necessarily turns on the facts and circumstances of each particular case. *Id.* A mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment. *Id.* "[A] pretrial detainee who asserts a due process claim for failure to protect [must] prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

### a. *Claims based on housing gang members with the general population*

Penque alleges that Malaqui and the Chief of Security housed known gang members with the MCCC's general population. ECF No. 15 at PageID ## 112, 114. Penque fails to say, however, how this decision put him at substantial risk of serious harm. Although Penque claims that assaults were "common" and occurred "almost daily" at the MCCC, he does not assert that these alleged assaults were disproportionately committed by gang members or that non-gang members were specifically targeted. Moreover, Penque does not allege that there was any reason to suspect that the four gang members who assaulted him, or the gang(s) to which they belonged, might do so. While Penque claims that a cellmate injured him in October 2018, by jumping on Penque as he slept, he does not assert that the

cellmate was a gang member.  Nor does he claim that the February 2019 assault was related to the October 2018 incident in any way.

Penque also has not shown that Malaqui or the Chief of Security failed to take reasonable available measures to abate any risk to him.  Indeed, Penque appears to acknowledge that separating gang members from the MCCC's general population might be impossible.  *See* ECF No. 15 at PageID # 112; *cf. Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (noting that "'[t]he number of gang members housed . . . and the high representation of certain gangs would place an unmanageable burden on prison administrators were they required to separate inmates by gangs'" (quoting *Mayoral v. Sheahan,* 245 F.3d 934, 939 (7th Cir. 2001) (brackets and ellipsis in original)).  Penque's claims against Malaqui and the Chief of Security based on housing gang members with the MCCC's general population are DISMISSED with leave to amend.

### b.  *Claims based on monitoring of recreation areas*

Penque alleges that an unnamed Duty Watch Commander at the MCCC and the Chief of Security failed to order that officers closely monitor the MCCC's recreation areas.  ECF No. 15 at PageID # 112.  Penque has not shown, however, that he was put at a substantial risk of suffering serious harm because of this decision.  Although Penque claims that assaults were "common" at the MCCC, he does not allege that this was true in "B-module" or its recreation yard.  Penque also

9

does not allege that he faced a particular threat of harm, or that he alerted anyone to such a threat, with respect to the recreation area or anywhere else. Nor does he claim that the four inmates who assaulted him had assaulted other inmates in the past.

Penque also has not shown that the Duty Watch Commander and the Chief of Security failed to take reasonable available measures to abate any such risk. Although Penque notes that prison officials installed a surveillance camera in B-module's recreation yard following a subsequent prison riot, ECF No. 15 at PageID # 114, he cites nothing suggesting that prison officials had reason to take this action prior to his assault. Penque's claims against the Duty Watch Commander and Chief of Security are DISMISSED with leave to amend.

### c. *Claims based on response to the assault*

Penque's FAC also makes various allegations regarding what occurred after the February 2019 assault. Penque claims that he "had to summons security staff repeatedly to gain attention[.]" ECF No. 15 at PageID # 111. According to Penque, he "hit the call box repeatedly." *Id.* at PageID # 113. Penque claims both that no one responded "until a half hour later," *id.* at PageID # 111, and that "no one responded at all," *id.* at PageID # 112.

Penque fails to state a claim for several reasons. Penque does not identify who was responsible for responding to the assault. He also does not provide the

duration of the assault or how long he waited after it ended to activate the call box. Nor does he clearly say how long it took prison officials to respond once he activated the call box or how any alleged delay in prison officials' response put him at substantial risk of suffering serious harm. Indeed, Penque does not allege that his attackers pursued him or sought to harm him further after the assault ended. Finally, Penque does not say how any Defendant's decision related to the response caused him injury. Penque's claims based on the response to his assault are DISMISSED with leave to amend.

### 2. Denial of adequate medical care

Penque alleges in Counts II and III that he was denied adequate medical care at the MCCC and OCCC, respectively. ECF No. 15 at 115–21. Claims for violations of the right to adequate medical care brought by pretrial detainees against individual defendants under the Fourteenth Amendment are evaluated under an objective deliberate indifference standard. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). The elements of a denial of medical care claim are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—

making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Id.* at 1125.

Regarding the third element, the defendant's conduct must be objectively unreasonable, a test that necessarily turns on the facts and circumstances of each particular case. *Id.* A mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment. *Id.* A pretrial detainee who asserts a due process claim for failure to protect must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (internal quotation marks omitted).

### a. Medical care at the MCCC

Penque alleges in Count II that Nurse Lopez denied him adequate medical care at the MCCC. ECF No. 15 at PageID ## 15–19. According to Penque, upon being released from the emergency room, his discharge paperwork stated that he "must see a specialist within 48 hours." *Id.* at PageID # 115. Over the course of the next seventeen days, Penque allegedly told Nurse Lopez and her medical team "[e]very single day" that his jaw was "dislocated and broken," and that he was supposed to see a specialist within two days of being discharged.[4] *Id.* at PageID

---

[4] Although Penque claims that he spoke with "several other nurses" in addition to Nurse Lopez, they are not named as Defendants. Penque includes "Nurses in Recorded Conversations" as Defendants, but he does not say if or how any of them are related to his denial of medical care claim. Penque's claims against "Nurses in Recorded Conversations" are thus DISMISSED without prejudice.

12

# 118.  He also allegedly told Nurse Lopez and her team that if he did not see a specialist, surgery would be necessary.  *Id.*

In addition, Penque allegedly submitted written requests and had his family members call Nurse Lopez.  *Id.*  According to Penque, his pleas were met with "sarcasm, [disbelief], frustration, and even contempt."  *Id.*  Penque was told that "there was no such directive in the discharge paperwork."  *Id.* at PageID # 116.  Penque claims, however, that Nurse Lopez never "check[ed] the records" to see if he was telling the truth.  *Id.*

Seventeen days passed before someone decided to fly Penque to Oahu to see a specialist.  *Id.* at PageID # 119.  By the time Penque saw the specialist, forty days had passed since his discharge from the emergency room.  *Id.*  By that point, a surgeon allegedly needed to "peel back [Penque's] face," "re-break his jaw and skull mandible," and reset them "by installing titanium plates and screws."  *Id.* at PageID # 117.  The surgeon allegedly told Penque, "If they could [have] gotten you to me even 2 weeks ago this would have required a much less extensive surgery."  *Id.* at PageID # 116.  Penque states a plausible claim against Nurse Lopez, and this claim may proceed.

### b. *Medical care at the OCCC*

Penque alleges in Count III that he was denied adequate medical care at the OCCC.  ECF No. 15 at PageID ## 120–21.

13

Penque first claims that upon returning to the OCCC after his April 8, 2019 surgery, he was denied a "clean proper resting place." *Id.* at PageID # 120. According to Penque, he was housed in an "overcrowded cell," where he slept on a mat on the floor, "with cockroaches crawling all over him and the entire cell." *Id.* Penque does not specifically identify who made this housing decision, how the placement put him at substantial risk of suffering serious harm, whether there were any reasonable available measures to abate any such risk, or how the housing decision caused him injury. Penque's claims based on his housing placement are DISMISSED with leave to amend.

Penque next claims that he asked Nurse Tiare for "medical supplies" to clean his wound. *Id.* at PageID # 120. Although Nurse Tiare denied Penque's request, Nurse Tiare told Penque that the OCCC's medical staff would clean his wound. *Id.* Nurse Tiare instructed Penque to report to the medical unit twice each day to have his wound cleaned. *Id.*

Penque fails to state a claim against Nurse Tiare for several reasons. First, he has not shown how Nurse Tiare's initial decision to deny him medical supplies put him at substantial risk of serious harm. Second, Penque does not allege that Nurse Tiare failed to take reasonable available measures to abate any risk of harm. Indeed, Nurse Tiare specifically instructed Penque to report to the medical unit twice a day to have the wound cleaned. Penque does not claim that this did not

14

happen. Third, Penque does not allege that, by failing to take any other reasonable available measures, Nurse Tiare caused his wound to become infected. Penque does not claim that providing him with medical supplies would have prevented the infection. Penque's claims against Nurse Tiare are DISMISSED with leave to amend.

Finally, Penque claims that he received inadequate medical care after his wound became infected. *Id.* at PageID # 121. According to Penque, the OCCC's lead doctor should have prescribed antibiotics "a week prior." *Id.* To the extent Penque claims that the OCCC's lead doctor was negligent, "medical malpractice or mere negligence is insufficient to make out a violation of the . . . Fourteenth Amendment." *Lau v. Kekuaokalani*, No. 17-00258 JMS-KSC, 2017 WL 3187216, at *5 (D. Haw. July 25, 2017). "Further, a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Id.* Moreover, Penque does not say when he met with the OCCC's lead doctor, what he told the doctor, or how the doctor responded. Although Penque claims that his face was "unrecognizable" after nine days because of swelling, he does not allege that this was the case when he met with the doctor. Penque's claims against the OCCC's lead doctor are DISMISSED with leave to amend.

15

## IV. LEAVE TO AMEND

The First Amended Complaint is DISMISSED IN PART with partial leave to amend, consistent with the directions in this Order on or before **January 8, 2021**. Penque may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims already alleged. Claims that do not properly relate to his First Amended Complaint are subject to dismissal.

If he elects to file an amended pleading, Penque must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.4, which require an amended complaint to be complete itself, without reference to any prior pleading. An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights complaint form. An amended complaint will supersede the preceding complaint. *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); LR10.4. Claims not realleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

**IN THE ALTERNATIVE:**

In writing on or before **January 8, 2021**, Penque may state that he elects to proceed solely on his denial of medical care claim in Count II against Nurse Lopez.

On receipt of such written notification, or if Penque fails to submit a timely amended complaint, the Court will order the First Amended Complaint, as limited by this Order, served on Nurse Lopez without further notice.

## V. **CONCLUSION**

(1) The Clerk is directed to TERMINATE Warden Taylor, ACO Himilaya, Maui Correctional Center Medical Department, ACO Conrady, and Doctor Strasberger as Defendants, as none of them have been identified as such in the FAC.

(2) Penque's claims against the Department of Public Safety and the State of Hawaii are DISMISSED with prejudice, as barred by the Eleventh Amendment.

(3) Penque's failure to protect claims in Count I against Malaqui, "Watch Commander," and "Chief of Security" are DISMISSED with leave to amend.

(4) Penque's denial of adequate medical care claim in Count II against Nurse Lopez may proceed. His other claims in Count II and Count III against "Nurses in Recorded Conversations," "Doctor (Lead Doctor) OCCC," and "Nurse Tiare OCCC" are DISMISSED with leave to amend.

(5) If he chooses, Penque may file an amended complaint that addresses the noted deficiencies in his claims on or before **January 8, 2021**.

(6) IN THE ALTERNATIVE to filing another amended complaint, Penque may notify the Court in writing on or before **January 8, 2021** that he elects to

proceed solely with his denial of adequate medical care claim against Nurse Lopez, as asserted in Count II.

If Penque fails to file either a further amended complaint or a notice of election by **January 8, 2021**, the Court will direct the FAC to be served, as limited by this Order.

(7)  The Clerk is DIRECTED to send Penque a prisoner civil rights complaint form so that he may comply with the directions of this Order, if he elects to file an amended complaint.

IT IS SO ORDERED.

DATED: December 11, 2020 at Honolulu, Hawaii.



　　/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

---

*Angelo David Penque v. Dep't of Pub. Safety, et al.*; Civil No. 20-00338 DKW-WRP; **ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART WITH PARTIAL LEAVE TO AMEND**