IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ANGELO DAVID PENQUE,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>JENNIFER LOPEZ,<br><br>　　　　Defendant. | Case No. 20-cv-00338-DKW-WRP<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

Defendant Jennifer Lopez moves for summary judgment on Plaintiff Angelo David Penque's sole remaining claim of denial of medical care in violation of the Fourteenth Amendment's Due Process Clause. Defendant argues that, based upon the evidence she presents, she either provided or arranged for adequate medical care to Plaintiff or was not the ultimate decisionmaker for the care Plaintiff received. In light of the fact that Plaintiff does not dispute (and, in fact, relies upon) the evidence submitted by Defendant, the Court agrees with Defendant that she did not violate Penque's constitutional rights. Notably, said evidence reflects that Defendant was not personally involved in Plaintiff's medical care for some time after the incident in question. In addition, once Defendant did become involved, the evidence reflects that she timely followed the instructions given to her by a doctor with authority to

facilitate the care Plaintiff contends he needed. Therefore, the motion for summary judgment is GRANTED, as more fully set forth below.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In particular, the movant's "initial responsibility" is to inform the district court of the basis for its motion and to identify those parts of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is then entitled to judgment as a matter of law if the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof. *Id*. In assessing a motion for summary judgment, all facts, including disputed facts, are construed in the light most favorable to the non-moving party. *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009); *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

In addition, because Penque is proceeding pro se, the Court liberally construes the briefing he has submitted. *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). However, the Court cannot act as counsel for a pro se litigant or supply the

essential elements of a claim. *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## FACTUAL BACKGROUND

The facts in the light most favorable to Plaintiff, as the non-movant, reflect the following. On February 23, 2019, Penque, then an inmate at the Maui Community Correctional Center (MCCC), suffered an injury inflicted by another inmate or inmates and was assessed by Nurse Ruth Pellegrin. Decl. of Jennifer Lopez at ¶ 5, Dkt. No. 45-2. Due to the potential severity of his injury, Penque was sent for evaluation to the Emergency Room at Maui Memorial Hospital (Hospital). *Id*. X-rays taken at the Hospital indicated an "irregular lucency extending through the posterior body of the left mandible" and that findings were "suspicious for a nondisplaced fracture involving the posterior left mandible." Exh. A to Defendant's Concise Statement of Facts (Exh. A) at SOH 0007, Dkt. No. 75.[1] The discharge comments from the Hospital reflect that Penque would "need to follow-up with a local oral maxillofacial surgeon within the next week." The comments also advised Penque to tell his infirmary that he had "face/jaw fractures that require follow-up." *Id*. at SOH 0005.

The next day, back at MCCC, Plaintiff was evaluated by Nurse Vickie Nesje. Lopez Decl. at ¶ 8. Nurse Nesje issued 200mg of Ibuprofen for pain. *Id*. In her

---

[1] Like the parties, in citing to Exhibit A, which consists of Plaintiff's medical records, the Court cites to the bates numbering in the bottom right corner of said document, *i.e.*, "SOH 0007."

notes of the visit, Nurse Nesje stated that she informed Penque that he had a "small fracture on both sides of his nose[]" and observed that "[i]t must not be bothering patient as he was leaning with his nose in his palm." Exh. A at SOH 0015. Nurse Nesje's notes also reflect a telephone call she had that day with Dr. Mark Pedri. The notes state that Nesje reviewed Penque's case with the doctor and would fax the files from the Hospital for the doctor to review. Based on the call, Dr. Pedri ordered a soft diet for Penque. *Id*.

During the period from February 25 through March 5, 2019, Penque was seen several times for assessment related to substance abuse withdrawal, blood pressure, and a "lab draw." Lopez Decl. at ¶ 9; Exh. A at SOH 0019-0024, 0027. None of these visits were with Lopez. Exh. A at SOH 0019-0024, 0027. In addition, on March 1 and March 2, 2019, Nurse Ruth Pellegrin spoke with Telicia Blythe, who stated that she was the fiancé of Penque, about Blythe's concerns regarding Penque's jaw and the "need to get medical records so he can get it fixed." *Id*. at SOH 0025-0026. Nurse Pellegrin advised Blythe to put a request in writing to her supervisor, Lopez. *Id*. at SOH 0025.

On March 6, 2019, Penque met with Dr. Pedri to review "jaw fracture documents" from the Hospital. *Id*. at SOH 0030. Dr. Pedri ordered a referral to oral surgery and ophthalmology, and ordered 800mg of Ibuprofen to be taken three times a day as needed. *Id*. at 0031. That same day, following Dr. Pedri's referrals,

4

and at his direction, Lopez searched for a local maxillofacial surgeon. Lopez Decl. at ¶ 11. At that time, there were three on Maui. *Id*. Two of them declined to see Penque because of "billing" and his status as an inmate. Exh. A at SOH 0028. The third doctor's office was closed on March 6, 2019, but the next day, Lopez was able to speak with the doctor's receptionist, who stated that the doctor no longer evaluated jaws. *Id*. at SOH 0028, 0032. Later on March 7, 2019, Dr. Pedri instructed MCCC nursing staff to call Oahu and speak with a specialist because it would "[p]robably be easier to transfer" Penque to Oahu for treatment. *Id*. at SOH 0033.²

On March 11, 2019, a riot took place at MCCC, resulting in the facility being placed in a lockdown status. Decl. of Deborah Taylor at ¶¶ 1, 3, 5. On March 14, 2019, MCCC began transferring out inmates involved in the riot, while the transfer of inmates not involved was delayed. *Id*. at ¶ 5. On March 20, 2019, Penque was transferred to Oahu. *Id*. On March 29, 2019, Penque was evaluated by Dr. Allen Strassberger, an oral maxillofacial surgeon. *See* Exh. A at SOH 0043-0044.³

---

²In her Declaration, Lopez states that she consulted with Dr. Pedri on March **9**, 2019 about transferring Penque to Oahu, citing Exhibit A at SOH 0033. Lopez Decl. at ¶ 14. SOH 0033, however, is dated March **7**, 2019, and does not state that Dr. Pedri spoke with Lopez on March 9. Instead, the document reflects that Dr. Pedri issued the instructions regarding Oahu on March 7, 2019.

³In her Declaration, Lopez states that Penque was seen by an oral surgeon on March **31**, 2019, citing Exhibit A at SOH 0041. Lopez Decl. at ¶ 15. SOH 0041, however, is silent on when Penque saw the oral surgeon. The record, instead, appears to reflect that Penque saw an oral surgeon, Dr. Strassberger, on March 29, 2019. *See* Exh. A at SOH 0043-0044.

As a nurse, Lopez did not have authority to refer an inmate to an outside medical provider or to place an inmate on the transfer list to another facility without direction from a doctor. Lopez Decl. at ¶ 16; Decl. of Caroline M. Mee at ¶ 3, Dkt. No. 45-3.

## RELEVANT PROCEDURAL BACKGROUND

On November 27, 2020, Penque filed a First Amended Complaint (FAC).[4] Dkt. No. 15. Therein, among other claims, Penque alleged, in Count Two, that Lopez denied him adequate medical care following an assault he suffered on February 23, 2019 while a pretrial detainee at MCCC. *Id*. at 11-15.[5] Because Penque was (and still is) proceeding *in forma pauperis*, the Court screened the FAC. In doing so, on December 11, 2020, the Court allowed the FAC to proceed with respect to the above-mentioned claim against Lopez. Dkt. No. 16 at 12-13. The Court dismissed all other claims alleged in the FAC, but granted leave to amend certain of the same. *Id*. at 17. Further, the Court gave Penque until January 8, 2021 to decide whether he would amend the FAC or proceed solely with the claim against Lopez. *Id*. at 17-18.

---

[4] Penque's original Complaint had been dismissed with partial leave to amend on October 8, 2020. Dkt. No. 11.
[5] In citing to the FAC, the Court cites the page numbers assigned by CM/ECF at the top of the page, *i.e.*, "Page 11 of 19."

After two extensions of the January 8, 2021 deadline to April 9, 2021, Dkt. Nos. 17-20, Penque elected not to file a further amended complaint. Therefore, the Court ordered service of the FAC on Lopez. Dkt. No. 21.

On March 1, 2022, Lopez filed the instant motion for summary judgment ("motion") and concise statement of material facts. Dkt. Nos. 44-45. After scheduling the motion for hearing on April 12, 2022, Dkt. No. 50, and prior to filing an opposition to the same, Penque filed a motion for leave to amend the FAC ("motion to amend"), Dkt. No. 56, which was referred to the assigned Magistrate Judge and resulted in the vacatur of the April 12, 2022 hearing, Dkt. No. 57. In the motion to amend, Penque argued that, in light of the motion, it appeared that Dr. Pedri was "liab[le]" for his medical care claim, rather than Lopez, and, thus, he should be allowed to file an amended complaint. Dkt. No. 56.

On June 3, 2022, the Magistrate Judge denied the motion to amend, finding that Penque was not entitled to amend the complaint because the motion to amend had been filed after the expiration of the deadline to add parties and Penque had failed to show diligence in seeking to add Dr. Pedri as a defendant. Dkt. No. 69.[6] With the denial of the motion to amend, the Court re-scheduled the hearing on the motion. Dkt. No. 70. Thereafter, Plaintiff filed an opposition to the motion, and Lopez filed a reply. Dkt. Nos. 71, 76. After reviewing the parties' briefing on the

---

[6] No opposition or appeal has been filed with respect to the Magistrate Judge's June 3, 2022 Order denying the motion to amend.

motion, the Court elected to vacate the hearing on the motion, Dkt. No. 77, and this Order now follows.

## RELEVANT LEGAL PRINCIPLES

Medical care claims brought by a pretrial detainee, such as Penque at the time of the alleged events in this case, arise under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018). Any such claim is, therefore, analyzed under "an objective deliberate indifference standard." *Id*. at 1125. This means that a pretrial detainee must show the following:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved−making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id*. In addition, "[t]he mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id*. (quotations and internal quotations omitted). "Thus, the plaintiff must prove more than negligence but less than subjective intent−something akin to reckless disregard." *Id*. (quotation omitted).

## DISCUSSION

In the motion, Lopez argues that, in light of the evidence presented, Penque has failed to establish any of the elements of his Fourteenth Amendment claim. As more fully discussed below, the Court agrees.

As an initial matter, the Court notes that the evidence in this case is not extensive and essentially consists of Penque's medical records and declarations from Lopez and other prison officials. That evidence has not been disputed by Penque and, in fact, he has relied upon the same in his opposition. Based upon that evidence, the events related to the claim against Lopez, which is the sole claim remaining before the Court, can be split into two different periods of time. The first is from February 23, 2019, when Penque suffered the alleged assault that resulted in him going to the Hospital for injuries to his jaw, through March 5, 2019, the day before Penque first met Dr. Pedri. During this time period, there is *no evidence* that Penque ever met with Lopez or that Lopez had any involvement in Penque's medical care. In other words, for this time period, there is no evidence that Lopez "made an intentional decision with respect to the conditions under which the plaintiff was confined[.]" *See Gordon*, 888 F.3d at 1125.

To the extent, in his opposition, Penque contends that Lopez, as the alleged supervisor of nurses at MCCC, was somehow involved in his medical care, the Court disagrees. Notably, supervisors are not "vicariously liable for constitutional

violations under section 1983." *Peralta v. Dillard*, 744 F.3d 1076, 1085 (9th Cir. 2014). Instead, they can be liable only for their own conduct, such as when they "knowingly fail to respond to an inmate's requests for help." *Id*. at 1085-86 (alteration and quotation omitted). Here, however, there is simply no evidence that Lopez failed to respond to any requests for help from Penque.[7] Rather, as just explained, at least from February 23 through March 5, 2019, the evidence is devoid of Lopez being involved in Penque's care in any way.

The second period of time is from March 6, 2019, when the evidence reflects Lopez first became involved in Penque's medical care, up to March 11, 2019, when a riot broke out at MCCC, which, the evidence shows, made it impossible for Penque to be immediately transferred from the facility. The evidence for this time period shows the following. On March 6, 2019, Penque met with Dr. Pedri for the first time related to the injuries he suffered on February 23, 2019. After this meeting, Dr. Pedri referred Penque for oral surgery and spoke with Lopez. On the same day, Lopez spoke with two of the three doctors on Maui who she believed specialized in oral surgery. Both of those doctors refused to accept Penque as a patient. Lopez also attempted to speak with the third Maui specialist, but his office was closed. As a result, on the next day, March 7, 2019, Lopez again called the third doctor's office, spoke with a receptionist, and was told that the doctor no longer

---

[7]This is true even of events related to Penque's fiancé, Blythe, given that there is no evidence that Blythe actually reached out to Lopez or, if she did, what she communicated.

evaluated jaws. Still on the same day, Lopez then spoke with Dr. Pedri, who instructed Lopez to speak with a specialist on Oahu and transfer Penque there as soon as possible. The only other relevant evidence in the record is that at some point on March 11, 2019, roughly four days later (two of which were the weekend), a riot broke out at MCCC, making it impossible to immediately transfer Penque to Oahu. Put simply, there is nothing in this recitation of the undisputed facts suggesting that Lopez made any intentional decision with respect to Penque's conditions of confinement that put him at substantial risk of suffering serious harm or that Lopez failed to take reasonable available measures to abate any risk. *See Gordon*, 888 F.3d at 1125.[8] Instead, the record reflects that Lopez, when given instructions related to Penque's care, acted quickly to ensure those instructions were carried out, such as by attempting to find a specialist in oral surgery on Maui *on the same day* she was given the task. When it became apparent (the next day) that no such referral to a Maui specialist would be possible, Lopez immediately contacted Dr. Pedri for further guidance. Moreover, it is also undisputed that, without instruction, Lopez simply did not have the authority to refer Penque to an outside specialist or have him transferred to Oahu.

Therefore, based upon this factual record, the Court finds that Penque has failed to establish the elements of his Fourteenth Amendment claim against Lopez

---

[8] There is also no evidence in the record that any measures Lopez took with respect to Penque's medical care caused any of the injuries he alleges he suffered.

relating to the denial of medical care, and Lopez is, accordingly, entitled to summary judgment.[9]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion for Summary Judgment, Dkt. No. 44. The Clerk is instructed to enter Final Judgment in favor of Defendants, pursuant to this Order, the October 8, 2020 Order (Dkt. No. 11), and the December 11, 2020 Order (Dkt. No. 16), and then CLOSE this case.

IT IS SO ORDERED.

DATED: July 5, 2022 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Angelo David Penque v. Jennifer Lopez*; Civil No. 20-00338 DKW-WRP; **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

[9] Because the Court finds that there was no constitutional violation here, it is unnecessary to address Lopez's alternative argument that she is entitled to qualified immunity.